Rabin, J.
This action for false arrest and false imprisonment arises from plaintiff’s warrantless arrest by a police officer of the defendant after the victim of a felony identified plaintiff as his assailant. The question posed is whether, as a matter of law, this identification furnished reasonable cause for the officer’s belief that plaintiff committed the felony and thereby justified the warrantless arrest. The trial court submitted the issue of reasonable cause to the jury and a verdict was rendered for plaintiff. The Appellate Division reversed holding that as a matter of law there was reasonable cause.
*21 The crime for which plaintiff was arrested occurred one and one-half blocks from plaintiff’s home in Westbury, New York, at appoximately 11:00 p.m. on the night of May 30, 1966, when an assailant fired a shotgun at the parked automobile in which one Earl Pugh and a companion were seated. The windshield and a side window of the car were damaged. That same night, Pugh reported the incident to the Nassau County Police and described the assailant. Officer James P. Kelly, a 17-year police veteran, immediately undertook the investigation of the crime. After midnight that night, a local resident was summoned by police from his home near the place of the shooting. Appearing as one of plaintiff’s witnesses at trial, he testified that at the police’s request and in the presence of Officer Kelly, he had stood before the headlights of a parked car and Pugh, from the car, had pointed at him and said “ That looks like him ”. This witness was 5 feet 8 inches tall. Officer Kelly denied that Pugh had made such a statement.
On the morning of Sunday, June 12, 1966, Pugh and Officer Kelly toured the vicinity of the shooting and visited plaintiff’s nearby home where plaintiff was present with his family. While Pugh looked on, Kelly had a brief conversation with plaintiff at the doorstep. Officer Kelly testified that he identified himself as a police officer and asked plaintiff if he “ knew ” about the crime and that plaintiff said “ no ”. Immediately thereafter, Pugh privately told Kelly that plaintiff was his assailant and the two went to the local station house where Pugh signed a statement to that effect. The officer made no attempt to obtain a warrant but returned to plaintiff’s home at approximately 1:30 p.m. and arrested him on the charge of assault in the first degree. Plaintiff was 47 years old, 6 feet 2 inches tall, weighed 205 pounds, had gray hair and wore glasses for reading. By contrast, on the night of the crime, Pugh had described his assailant as 55 to 65 years old, 5 feet 8 inches or 5 feet 9 inches, tall, heavy build, light gray or blond hair and wearing eyeglasses. Plaintiff was jailed for four hours before bail was procured and was arraigned on Monday, the next day. At the preliminary hearing on Tuesday, two days after the arrest, the charge was dismissed after Pugh failed to make a second identification.
*22 The controlling statute at the time of the arrest was subdivision 3 of section 177 of the Code of Criminal Procedure (now superceded by CPL 140.10) which provided: “ A peace officer may, without a warrant, arrest a person * * * 3. "When a felony has in fact been committed, and he has reasonable cause for believing the person to be arrested to have committed it ”.
Plaintiff sued, inter alia, for false arrest and false imprisonment.[1] The defendant pleaded the affirmative defense of justification — that a felony had, in fact, been committed and that Pugh’s identification -supplied the necessary reasonable cause for the officer’s belief that plaintiff had committed it. During the jury trial, defendant moved to dismiss the complaint for failure to make out a prima facie case, contending that plaintiff had the burden to show the officer lacked reasonable cause and that such cause was established, as a matter of law, by Pugh’s identification. The Trial Judge reserved decision on the motion and ultimately submitted the question of reasonable cause to the jury. He charged that defendant had the burden to prove reasonable cause and that its burden would be met if the jury concluded, by a preponderance of the credible evidence, that the facts and circumstances known to the officer at the time of the arrest were such as would lead a reasonable and prudent person to believe that plaintiff had committed the felony. The jury returned a verdict for plaintiff, awarding $15,000 damages. Defendant’s motion to set aside the verdict was denied.
The Appellate Division, Second Department, one Justice dissenting, reversed on the law, granted defendant’s motion to set aside the verdict and dismissed the complaint in its entirety. In so doing, it found that plaintiff had the burden to prove lack of reasonable cause for the arrest and had failed to make out a prima facie case because Pugh’s identification supplied such cause, as a matter of law. We cannot agree.
It is clear that plaintiff made out a prima facie casé for false arrest and false imprisonment by showing that defendant’s police officer intentionally arrested and confined him against his consent, and without the lawful privilege of a warrant (see, *23 e.g., 1 Harper and James, Law of Torts, §§ 3.6-3.7, pp. 224-226; 1 Cooley, Torts [4th ed.], § 109; Prosser, Torts [3d ed.], § 12; Restatement, 2d, Torts, § 35). Because the arrest and imprisonment were effected without a warrant, a presumption arises that both are unlawful, and the burden of proving justification, including “ reasonable cause ”, is cast upon the defendant (Woodson v. New York City Housing Auth., 10 N Y 2d 30, 33; Cicurel v. Mollet, 1 A D 2d 239, 241, affd. 1 N Y 2d 797; Bonnau v. State of New York, 278 App. Div. 181, 182, affd. 303 N. Y. 721; Clark v. Nannery, 292 N. Y. 105, 108; Schultz v. Greenwood Cemetery, 190 N. Y. 276, 279).
The requirement that an officer have reasonable cause for a warrantless arrest represents a compromise, with its roots deep in the common law, between the individual’s interest in personal liberty and society’s competing interest in its own protection through the apprehension of criminals. (See, e.g., Harper and James, Law of Torts, § 3.18; 1 Cooley, Torts [4th ed.], § 112.) Where such cause exists, and a felony has been committed, a police officer is justified in arresting without a warrant, irrespective of the innocence of the person arrested.[2] While this compromise may occasionally subject law-abiding persons to inconvenience or hardship, “ any more lax rules would be greatly dangerous to the peace of the community and make the escape of criminals frequent and easy.” (Burns v. Erben, 40 N. Y. 463, 470.)
Reasonable cause will, of course, vary according to the circumstances and exigencies of each particular case and as a consequence a “ tight, inclusive definition is neither necessary nor desirable.” (People v. Coffey, 12 N Y 2d 443, 451.) Grood faith alone is not enough. (Snead v. Bonnoil, 166 N. Y. 325, 328; McLoughlin v. New York Edison Co., 252 N. Y. 202, 205.) In addition to good faith, there must be reasonable ground for the officer’s belief that the person to be arrested committed the felony. In Coffey, Chief Judge Desmond approved the following formulation for reasonable cause (6 C. J. S., Arrest, *24 § 6, p. 596), which we reaffirm: “ ‘ Where an officer, in good faith, believes that a person is guilty of a felony, and his belief rests on such grounds as would induce an ordinarily prudent and cautious man, under the circumstances, to believe likewise, he has such probable cause for his belief as would justify him in arresting without a warrant.’ ” (12 N Y 2d 443, 451, supra.)
Applying this test to the facts before us: would an ordinarily prudent and cautious person, under the circumstances known to the officer, have made the arrest upon Pugh’s identification, without delaying to procure a warrant? Thirteen days had elapsed since the felony was committed. It had occurred at night while Pugh was seated in his car, and he may not then clearly have seen his assailant. The description given by Pugh on the night of the crime, when his recollection was the freshest, was substantially at variance with plaintiff’s characteristics; specifically, there was a 5 to 6 inch discrepancy in height, an 8 to 18 year discrepancy in age, and discrepancies as to build and possibly as to the use of eyeglasses. The officer did not question Pugh about these discrepancies or otherwise test his recollection. There was direct testimony, contradicted by Officer Kelly, that on the night of the felony, Pugh had pointed out a third person as looking like his assailant who was six inches shorter than plaintiff.[3] Officer Kelly knew that plaintiff lived in the neighborhood, and on the day of the arrest, a Sunday nearly two weeks after the crime, plaintiff was at home with his wife and children. There was no indication whatever that plaintiff was fleeing or would attempt to flee during the time it would have taken to obtain a warrant. Nor was there any other exigency .which might have advised the officer against taking the time to seek out a Magistrate to issue a warrant.
We conclude that these are facts from which reasonable men might draw different inferences, particularly on the crucial issue of the reasonableness of the officer’s complete reliance upon the identification to support his belief that plaintiff had committed the felony. Taking into account the circumstances known to the officer at the time of the arrest, we cannot say that as a matter of law the officer’s reliance upon Pugh’s identifi *25 cation was reasonable; or, stated differently, that Pugh’s identification constituted, as a matter of law, such grounds as would induce an ordinarily prudent and cautious person, under the circumstances, to believe that plaintiff had committed the felony.
In many cases where the victim has made a “ positive identification ”, the circumstances may be such as to warrant a court’s finding of reasonable cause as a matter of law (see, e.g., Burns v. Erben, 40 N. Y. 463, 467, 469, supra; Stearns v. New York City Tr. Auth., 24 Misc 2d 216, 219, affd. 12 A D 2d 451). But in this case, because the evidence gave rise to inferences on which reasonable people might differ, the Trial Judge properly submitted the question of reasonable cause to the jury (Clark v. Nannery, 292 N. Y. 105, 107, supra; Snead v. Bonnoil, 166 N. Y. 325, 328, supra).
Accordingly, the order appealed from should be reversed and the matter remitted to the Appellate Division pursuant to CPLB. 5613 for review of the questions of fact raised in that court.

. Plaintiff takes no appeal from the dismissal during trial of this third cause of action for malicious prosecution or from the setting aside of a verdict in his favor on a fourth cause of action for negligence.

. Subdivision 4 of section 177 of the Code of Criminal Procedure sanctioned a warrantless arrest “ When [the peace officer] has reasonable cause for believing that a felony has been committed, and that the person arrested has committed it, though it should afterward appear that no felony has been committed, or, if committed, that the person arrested did not commit it ”.

. At trial, this witness stood next to the plaintiff so that the jury conld compare the physical characteristics of the two.